IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00405-GPG

GREGORY REED,

     Plaintiffs,

v.

PEOPLE OF THE STATE OF COLORADO,
RICK RAEMISCH,
JAMES FALK,
FRANCES FALK,
ROBERTA WALTERS,
MATTHEW HANSEN,
RYAN LONG,
THOMAS LITTLE,
HUERMAN, Lt.,
T. MASONCUP,
YATES, Captain,
FLORY, Sgt.,
MARY CARLSON,
THERESA REYNOLDS, and
NURSE CAMPBELL

     Defendants.

_____

ORDER DIRECTING PLAINTIFF TO FILE SECOND AMENDED COMPLAINT

_____

     Plaintiff, Gregory Reed, who is in the custody of the Colorado Department of

Corrections (CDOC) at the Correctional facility in Limon, Colorado ("LCF"), initiated this

action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343, along with three other prisoner

Plaintiffs.   Plaintiff Reed also filed a Motion to Certify the Class Pursuant to F.R.C.P. 23.

     On February 25, 2016, following review of the Plaintiff's filings, the Court denied

the motion for class certification; dismissed without prejudice the Plaintiffs other than

Plaintiff Reed, pursuant to Fed. R. Civ. P. 21; and, ordered Plaintiff Reed to cure

deficiencies by filing a properly supported 28 U.S.C. § 1915 motion, or pay the $400.00

filing fee, and, filing an Amended Prisoner Complaint that contains only those allegations

and claims pertaining to Mr. Reed.   On March 22, 2016, Mr. Reed filed a § 1915 motion

and an Amended Prisoner Complaint.   (ECF No. 11).   He was granted leave to proceed

*in forma pauperis* on April 6, 2016.

The Court reviews the Amended Complaint liberally because Mr. Reed is not

represented by an attorney.   The Court must construe the Second Amended Complaint

liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404

U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However,

the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.   For

the reasons discussed below, Plaintiff will be directed to file a Second Amended

Complaint.

## I.      The Amended Complaint

Mr. Reed asserts the following claims in the Amended Complaint.

**<u>Claim One</u>**: Since 2007, Defendants have deprived him of his constitutional rights

of access to the courts, freedom of religion, freedom of expression, freedom from

defamation of character, and the equal protection of the laws.   Defendants have also

retaliated against him for filing grievances.   Plaintiff alleges that in March 2008, he filed

grievances challenging the denial of proper legal assistance and law library access to

inmates.   He further contends that since 2007, there have been numerous lock-downs

due to excessive gang violence that has resulted in the deprivation of religious freedoms

and the arbitrary re-classification of prisoners.   Mr. Reed also alleges that he has

2

suffered from racial profiling and was labeled incorrectly as STG (gang affiliation) by Defendants Hansen, Little and Huerman pursuant to administrative policies re: offender mail screening that were implemented by those Defendants, as well as Defendants Raemisch and Falk in September 2014.   He alleges that in September 2014, he was reclassified to a close security unit in retaliation for filing grievances and as part of "a systemic scheme by Defendant Hansen and Little" to deprive Plaintiff of his constitutional rights.   He claims that his improper classification as STG, which has resulted in him being placed on lockdown status as recently as April 2015, violates his federal due process rights.   He filed grievances with Defendants Frances Falk (the former LCF warden) and James Falk (the current LCF warden) challenging the policies and his re-classification, which were denied.   Finally, Mr. Reed alleges that the CDOC has implemented administrative regulations that hinder inmates from obtaining copies of legal materials and that the prison law library, which is supervised by Defendant Reynolds, does not furnish offenders with assistance in preparing pleadings.

**Claim Two:**   Mr. Reed asserts that the following conduct violated his Eighth Amendment rights and his Fourteenth Amendment due process and equal protection rights.   **(A) Improper Classification and Lockdowns.**   Defendants Falk, Hansen, Long, Little, Huerman and Yates have ordered and implemented a lockdown at LCF numerous times since 2009 because of the actions of security threat groups, which have required Plaintiff to be confined to a cell with another offender for more than 10 hours a day, with minimal opportunity for exercise. He further states that he was denied fingernail and toenail clippers during the lockdowns.   Mr. Reed states that he was placed on lockdown in April and May 2014 due to gang violence in the prison.   While other

3

offenders were removed from lockdown for lack of a gang affiliation, Defendants

Huerman, Hansen, Little and Yates refused to remove Plaintiff because he had been

"illegally classified as (STG)."   (ECF No. 11 at 14).   Plaintiff states that he was placed on

lockdown against in February and April 2015.   Mr. Reed also alleges that he was been

"selectively reclassified" on several occasions.   He filed grievances challenging the

reclassifications, which were denied by Defendant Walters and Hansen.   Mr. Reed

states that after he was reclassified to minimum restrictive in April 2015, he was not

allowed to transfer to a lesser security facility, even though Caucasian offenders who

were reclassified were allowed to transfer immediately; **(B) Prison Employment**: Plaintiff

alleges that Defendants Hansen, Falk, Little, Yates, Long and Little have denied him

desired employment opportunities by assigning him to one of the "worst job positions"

because he is classified as close custody inmate, and because of his race; **(C) Diet:** Mr.

Reed alleges that the prison is not providing him with a nutritiously adequate diet (i.e,

processed foods and not enough calories).   When he wrote to Defendant Raemisch to

complain about the food service, he did not receive a response; **(C) Recreation**: In April

2014, Defendants Raemisch, Falk, Hansen, Little and Huerman implemented recreation

policies for "close custody" inmates that allows the inmates 50 minutes or less each day

for outdoor recreation.   When the weather precluded outdoor recreation, Plaintiff was

required to recreate in a gym that was crowded by the inmates from five other living units,

with little available exercise equipment; **(D) Denial of Medical Care:**   In February 2015,

Mr. Reed was transported to an outside hospital for an emergency involving a blood clot

in his right lower leg.   The physician told Plaintiff that the small blood clot should dissolve

if he applied a hot pack four times a day.   When he returned to LCF, the prison doctor

4

implemented those instructions.   However, the prison doctor did not give Plaintiff any

prescription medication to alleviate the pain he suffered from the blood clot.   Mr. Reed

further states that Defendant Campbell and other medical personnel have failed to

provide any medical treatment for a bone spur in his left ankle; Hepatitis C; and, the

deterioration of his right knee and bones in his feet; **(E)** Defendant Carlson has failed to

award him good and earned time credits to which he is entitled; **(F)** Mr. Reed's conviction

violates the Ex Post Facto Clause and he is entitled to a jury trial.

**Claim Three:**   Mr. Reed alleges that in April 2014, he was convicted of

possession or use of dangerous drugs (marijuana), in violation of the CDOC's Code of

Penal Discipline.   Plaintiff asserts that the disciplinary conviction was obtained in

violation of his Fourth Amendment rights because at the time he provided a urine sample,

Defendant Masoncup told him that is was "random" and not "suspicion."   Further,

Defendant Masoncup was not allowed to administer a urinalysis (UA) under CDOC policy

because of his low officer rank.   Mr. Reed states that he was classified from low to

medium security as a result of the disciplinary conviction and that his visiting privileges

were suspended for six months by Defendant Falk.   He states that he was subjected to

two more "suspicion" UA's in September and October 2015, because Defendant Flory

"smelled marijuana around [his] cell, and that he was subjected to strip searches and cell

searches pursuant to the Orders of Defendant Hansen, Little and Yates, in violation of

CDOC regulations.   Plaintiff asserts that the successive UA's violate his due process and

equal protection rights because Defendant Flory subjects African-American inmates to

more frequent UA's than Caucasian inmates.

In the Complaint, Mr. Reed requests monetary relief, and a court order preventing

his transfer to a facility other than LCF during the pendency of this litigation.

## II.    Analysis

The Amended Complaint is deficient because several of Mr. Reed's claims are based on vague and conclusory allegations that his federal constitutional rights have been violated.   Conclusory allegations do not entitle a pro se pleader to a day in court regardless of how liberally the court construes such pleadings.   *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd,* 961 F.2d 916 (10th Cir. 1992). Furthermore, the general rule that pro se pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."   *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).   Thus, "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well pleaded factual contentions, not his conclusory allegations."   *Hall*, 935 F.2d at 1110.   Neither the court nor Defendants are required to guess in order to determine the specific factual allegations that are being asserted in support of each claim.

In order to state a cognizable claim in federal court Mr. Reed must identify the specific factual allegations that support each claim, against which Defendant or Defendants he is asserting each claim, and what each Defendant did that allegedly violated his rights.   *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (noting that, to state a claim in federal court, "a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated").

### A. Eleventh Amendment Immunity

The State of Colorado and its entities are protected by Eleventh Amendment immunity.   *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988).   "It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies."   *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994), *overrruled on other grounds by Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998).   The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and congressional enactment of § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-345 (1979).   Claims asserted against the individual Defendants in their official capacities are construed as claims against the State of Colorado, *see Hafer v. Melo*, 502 U.S. 21, 25 (1991), and are also barred by the Eleventh Amendment.   Accordingly, Mr. Reed may not sue the State of Colorado or the individual Defendants, in their official capacities, for monetary or retrospective equitable relief.

The Eleventh Amendment, however, does not bar a federal court action so long as the plaintiff seeks in substance only prospective relief and not retrospective relief for alleged violations of federal law, but a plaintiff must assert a claim for prospective relief against individual state officers.   *Verizon Maryland v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007).

7

### A.    Fourteenth Amendment due process claims

Mr. Reed claims that the change in his security classification and numerous placements in lockdown violated his Fourteenth Amendment due process rights.   He also challenges a prison disciplinary action for marijuana possession that negatively impacted his security classification, but did not result in the loss of good time credits.

To state an arguable due process claim, Mr. Reed must allege facts that demonstrate he intentionally was deprived of a constitutionally protected interest in life, liberty, or property.   *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).   The existence of a constitutionally protected liberty interest depends upon the nature of the interest asserted.   *See Sandin v. Conner*, 515 U.S. 472, 480 (1995).   A prisoner is not entitled to any procedural protections in the absence of a grievous loss.   *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).   Generally, a liberty interest protected by due process may arise under the United States Constitution or state law.   *See Sandin*, 515 U.S. at 483-84.   However, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."   *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).   State law may create a liberty interest if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.   Relevant factors to be considered in determining whether certain conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life include whether the conditions relate to and further a legitimate penological interest, whether the conditions are extreme, whether the conditions increase the duration of confinement, and whether the conditions are indeterminate.   *See DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir.

2007).

Mr. Reed will be directed to file a Second Amended Complaint in which he alleges specific facts to show that he conditions of his confinement in lockdown, or as a result of an adverse security classification, imposed an atypical and significant hardship in relation to the ordinary incidents of prison life.

Finally, to the extent Mr. Reed claims that he is being denied good or earned time credits because of a *mandatory* change in his classification level, his claim affects the execution of his sentence and must be pursued in an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. *See*, *e.g.*, *Wilson v. Jones*, 430 F.3d 1113, 1120–21, 1123 (10th Cir.2005). Otherwise, Mr. Reed does not have a protected liberty interest in receiving good and earned time credits that are discretionarily awarded under Colorado law. *See Fogle v. Pierson*, 425 F.3d 1252, 1262 (10th Cir. 2006); *Frazier v. Jackson*, No. 09-1429, 385 F. App'x 808, 811 (10th Cir. July 2, 2011) (unpublished) (same).

## B. Equal Protection

Mr. Reed asserts equal protection violations based on his classification as STG and concomitant placement in prison lockdowns, as well as the multiple non-random UA's that he was required to provide. In support of his equal protections claims, he relies on conclusory assertions of disparate treatment.

In order to state an arguable equal protection claim Mr. Reed must allege specific facts to demonstrate he intentionally was treated differently than similarly situated inmates. *See Penrod*, 94 F.3d at 1406. "Equal protection of the laws doesn't guarantee equal results for all." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (internal quotation marks omitted). Instead, the Equal Protection Clause "seeks to ensure that

any classifications the law makes are made without respect to persons, that like cases are treated alike, that those who appear similarly situated are not treated differently without, at the very least, a rational reason for the difference." *Id.* (internal quotation marks omitted). Mr. Reed's equal protection claims are based on conclusory assertions, rather than specific facts showing disparate treatment.

## C. Denial of Access to the Courts

Mr. Reed asserts that he has been denied his constitutional right of access to the courts because LCF does not afford inmates adequate legal assistance and hinders inmates from obtaining copies of legal materials.

To state an arguable claim, Plaintiff must plead facts to show that he was impeded in his ability to file a civil rights action. *See Lewis v. Casey*, 518 U.S. 343, 354–55 (1996) (plaintiff must allege that the state's interference led to an "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing]" his efforts to pursue a legal claim"); s*ee also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir.1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."). Because Plaintiff was successful in filing the instant civil rights action, it appears he would not be able to adequately assert a viable claim for denial of access to the courts.

## D. Freedom of Religion and Expression

Mr. Reed makes conclusory assertions that the Defendants infringed on his First Amendment rights to freedom of religion and expression when they placed him on lockdown status because of a security threat and implemented new policies concerning offender mail.

Prisoners retain their First Amendment rights while incarcerated.   *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted).   However, prisoners' rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).   In particular, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Accordingly, to state an arguable First Amendment claim, Mr. Reed must plead sufficient facts to indicate that the actions of his complains were not reasonably related to legitimate penological interests.   *See Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). There are not allegations in the Amended Complaint to show that the prison lockdowns were not reasonably related to the Defendants' legitimate interest in maintaining prison security.

### E.   Eighth Amendment

Mr. Reed claims that his Eighth Amendment rights were violated by his improper reclassification and prison lockdowns; the failure to provide him with appropriate prison employment; lack of a nutritiously adequate diet; lack of sufficient recreation; and denial of adequate medical care.

In order to state an arguable Eighth Amendment claim based on the conditions of confinement, Plaintiff must demonstrate, in part, that the infringement was sufficiently serious.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   "[E]xtreme deprivations are required to make out a conditions-of-confinement claim."   *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).   The Eighth Amendment is not violated unless the conditions deprive a prisoner of the "'minimal civilized measure of life's necessities.'"   *Wilson v. Seiter*, 501

U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).
Moreover, "[t]he Eighth Amendment 'does not mandate comfortable prisons,' and
conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d
1299, 1311 (10th Cir. 1998) (citation omitted).   The core areas entitled to protection
pursuant to the Eighth Amendment include food, shelter, sanitation, personal safety,
medical care, and adequate clothing.   *See Clemmons v. Bohannon*, 956 F.2d 1523,
1527 (10th Cir. 1992).   An inmate asserting an Eighth Amendment claim also must
allege that the Defendants acted with deliberate indifference.   Deliberate indifference
means that "a prison official may be held liable . . . only if he knows that inmates face a
substantial risk of serious harm and disregards that risk by failing to take reasonable
measures to abate it."   *Farmer*, 511 U.S. at 847.

Plaintiff's allegations in the Complaint concerning the conditions of confinement
during lockdown, the failure to provide a nutritiously adequate diet, and failure to provide
adequate recreation and employment opportunities, do not demonstrate a deprivation "of
the minimal measure of life's necessities," as required to state a claim based on an Eighth
Amendment violation.   Further, Mr. Reed's allegations concerning the denial of
adequate medical care lack an adequate factual basis and fail to show that Defendant
Nurse Campbell was personally involved in every action or inaction of which the Plaintiff
complains.

### F.  Retaliation

Mr. Reed also makes conclusory assertions that one or more of the Defendants
retaliated against him for filing grievances.

Prison officials may not retaliate against an inmate for exercising his constitutional

12

rights. *See Peterson v. Shanks* , 149 F.3d 1140, 1144 (10th Cir. 1998).   To state a

retaliation claim Mr. Thomas must demonstrate: (1) he was engaged in constitutionally

protected activity, (2) Defendant's actions caused him to suffer an injury that would chill a

person of ordinary firmness from continuing to engage in that activity, and (3) Defendant's

adverse action was substantially motivated as a response to Plaintiff's constitutionally

protected activity.   *See Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir.2007).

"Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather

allege specific facts showing retaliation because of the exercise of the prisoner's

constitutional rights."   *Gee*, 627 F.3d at 1191 (quoting *Frazier v. Dubois*, 922 F.2d 560,

562 n. 1 (10th Cir. 1991)). The Plaintiff does not allege any specific facts in the Amended

Complaint to show that a particular defendant retaliated against him because of his

exercise of constitutional rights.

### G.  Fourth Amendment

Mr. Reed contends that Defendants violated his Fourth Amendment rights by

subjecting him to cell searches and strip searches.

The Fourth Amendment proscription against unreasonable searches does not

apply within the confines of the prison cell.   *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

Accordingly, Mr. Reed does not assert an arguable § 1983 claim based on what he

perceives to be unreasonable cell searches.

A strip search, however, "represents a serious intrusion upon personal rights."

Chapman v. Nichols, 989 F.2d 393, 395 (10th Cir.1993).   Determination of the

constitutionality of a strip search "requires a balancing of the need for the particular

search against the invasion of personal rights that the search entails. Courts must

consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *see also Farmer v. Perrill*, 288 F.3d 1254, 1259-60 (10th Cir. 2002) (applying *Bell* and holding that strip search of convicted prisoner must be conducted in private unless prison officials have a rational basis for conducting the search in a public place).   Mr. Reed does not allege any facts in the Amended Complaint concerning whether the strip searches were conducted in private or public.

### H.   Challenge to Validity of Criminal Conviction

Mr. Reed claims that his state court's adjudication of him as a habitual offender violates the Ex Post Facto Clause.

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), if a judgment for damages necessarily would imply the invalidity of a criminal conviction or sentence, the action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ.   *See Heck*, 512 U.S. at 486-87.   In short, a civil rights action filed by a state prisoner "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."   *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Plaintiff's § 1983 claim challenging the validity of his state court conviction is barred by the rule of *Heck.*

### I.    Personal Participation

Personal participation is an essential allegation in a § 1983 action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.   *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir.2009) (citations and quotations omitted); *Dodds v. Richardson*, 614 F.3d 1185, 1200-1201 (10th Cir. 2010).   A supervisor can only be held liable for his own deliberate intentional acts.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.").   in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

In the Second Amended Complaint that Mr. Reed will be directed to file, he must allege specific facts to show how each named Defendant was personally involved in a deprivation of his constitutional rights.   Plaintiff must identify which of the two Falk

15

Defendants are involved in which alleged constitutional deprivations.   Further, Plaintiff is reminded that a Defendant such as Rick Raemisch, the Director of the Colorado Department of Corrections, or the Wardens of LCF, may not be held liable on the basis that they denied Plaintiff's grievances.   The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Whitington v. Ortiz*, No. 07-1425, 307 F. App'x 179, 193 (10th Cir. Jan. 13, 2009) (unpublished) (stating that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.") (internal quotation marks and citation omitted); *Davis v. Ark. Valley Corr. Facility*, No. 02-1486, 99 F. App'x 838, 843 (10th Cir. May 20, 2004) (unpublished) (sending "correspondence [to high-ranking prison official] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983").

### J.  Statute of Limitations

The Amended Complaint contains allegations of alleged unconstitutional conduct going back as far as 2007.   Mr. Reed initiated this action on February 18, 2016.

The applicable statute of limitations for a § 1983 claim in Colorado is two years. *See Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993).   The statute of limitations begins to run when a claim accrues.   Under federal law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) (internal quotation marks omitted). Mr. Reed's factual allegations suggest that he was aware of his injuries when they occurred.   In the Second Amended Complaint, Mr. Reed should include claims based

16

only on events that occurred within the two-year statutory limitations period (i.e., February 18, 2014 to the present).   Accordingly, it is

ORDERED that Mr. Reed file, **within thirty (30) days from the date of this order**, a Second Amended Complaint that complies with the directives in this Order.   It is

FURTHER ORDERED that Mr. Reed shall obtain the court-approved Prisoner Complaint form (with the assistance of his case manager or the facility's legal assistant), along with the applicable instructions, at www.cod.uscourts.gov.   It is

FURTHER ORDERED that, if Mr. Reed fails to file an amended complaint that complies with this order within the time allowed, the action will be dismissed without further notice.

DATED April 19, 2016, at Denver, Colorado.

BY THE COURT:

_____
Gordon P. Gallagher
United States Magistrate Judge